IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION



UNITED STATES OF AMERICA

v.

**SEALED**

CRIMINAL NO. 2:19-cr-28-KS-MTP

SHAHJAHAN SULTAN, M.D.,
THOMAS EDWARD STURDAVANT, M.D.,
FREDA CAL COVINGTON, R.N., and
FALLON DENEEM PAGE, R.N.

18 USC § 1349
18 USC § 1341
21 USC § 846
21 USC § 841(a)(1)
18 USC § 371
42 USC § 1320a-7b(b)

**The Grand Jury Charges:**

**Background**

1.      TRICARE, administered by the United States Department of Defense, was a federal
health care benefit program that provided health care benefits to members of the United States
military, as well as to their families, in addition to military retirees.

2.      Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company ("Blue Cross")
was a Mississippi for-profit health and accident insurance company that provided health care
benefits to member entities and individuals.

3.      United Healthcare of Mississippi, Inc. ("United") was a Mississippi for-profit health and
accident insurance company that provided health care benefits to member entities and individuals.

4.      TRICARE, Blue Cross, and United were "health care benefit programs" within the
meaning of Title 18, United States Code, Section 24(b).

5.      Individuals who qualified for TRICARE benefits were commonly referred to as
"beneficiaries."

6.      Individuals who qualified for Blue Cross or United benefits were commonly referred to

as "members."

7.     Medical service providers, including hospitals, clinics, physicians, nurse practitioners, and pharmacies ("service providers"), meeting certain criteria, could provide medical services to beneficiaries and members, and subsequently submit claims, either electronically or in hardcopy, to TRICARE, Blue Cross, United, and other health care benefit programs seeking reimbursement for the cost of services provided.

8.     TRICARE, Blue Cross, United, and other health care benefit programs provided prescription drug coverage, including prescription coverage for compounded medications, to eligible beneficiaries and members through its pharmacy programs.

9.     The United States Food and Drug Administration ("FDA") defined compounded medications as drugs that were combined, mixed, or altered from other drugs by licensed pharmacists or other licensed practitioners, pursuant to valid prescriptions issued by licensed medical professionals, including physicians ("prescribers"), to meet the specific needs of individual patients.

10.     According to the FDA, prescribers could prescribe compounded medications to patients upon considering patients' diagnoses, medical conditions, health factors, and reactions to other medications, and only after determining that commercially available medications were not as beneficial or potentially inappropriate or harmful to patients.

11.     For prescription drugs, including compounded medications, to be appropriately reimbursed, TRICARE, Blue Cross, United, and other health care benefit programs required that these drugs be dispensed pursuant to valid prescriptions and be medically necessary for the treatment of covered illnesses.  In other words, TRICARE, Blue Cross, United, and other health care benefit programs would not reimburse prescription drugs, including compounded

medications, which were not medically necessary or dispensed without a valid prescription.

12.     TRICARE, Blue Cross, United, and other health care benefit programs reimbursed pharmacies dispensing compounded medications based upon the average wholesale price of the individual ingredients contained within the compounded medications.

13.     TRICARE's pharmacy program was administered by Express Scripts, a Pharmacy Benefit Manger, whose responsibility was to receive, adjudicate, and pay TRICARE claims submitted by service providers or beneficiaries.

14.     Blue Cross's pharmacy program was administered by CVS Caremark, a Pharmacy Benefit Manager, whose responsibility was to receive, adjudicate, and pay Blue Cross claims submitted by services providers or members.

15.     United's pharmacy program was administered by OptumRx, a Pharmacy Benefit Manager, whose responsibility was to receive, adjudicate, and pay United claims submitted by services providers or members.

## The Defendant and Relevant Entities and Individuals

16.     Defendant **SHAHJAHAN SULTAN, M.D.** ("SULTAN"), of Madison, Mississippi, was a physician licensed to practice medicine in the state of Mississippi.

17.     Defendant **THOMAS EDWARD STURDAVANT, M.D.** ("STURDAVANT"), of Kingsport, Tennessee, was a physician licensed to practice medicine in the state of Mississippi.

18.     Defendant **FREDA CAL COVINGTON, R.N.** ("COVINGTON"), of Hattiesburg, Mississippi, was a registered nurse in the state of Mississippi, and recruited beneficiaries and members to receive prescriptions from **SULTAN** and **STURDAVANT**.

19.     Defendant **FALLON DENEEM PAGE, R.N.** ("PAGE"), of Soso, Mississippi, was a registered nurse in the state of Mississippi, and recruited beneficiaries and members to receive

3

prescriptions from **SULTAN** and **STURDAVANT**.

20.     Pharmacy 1, formed in 2013 and located in Jackson County, Mississippi, was an open door, retail pharmacy, specializing in the production of compounded medications.

21.     Medical Solutions of Ocean Springs, LLC, formed in 2013 and located in Harrison and Jackson Counties, Mississippi, was a Mississippi Limited Liability Company owned and operated by **SULTAN**, and through which **SULTAN** practiced medicine ("Medical Solutions").

22.     Pittsburgh Medical Marketing of Ocean Springs, LLC, formed in 2014 and located in Harrison and Jackson Counties, Mississippi, was a Mississippi Limited Liability Company owned and operated by **SULTAN**, which performed marketing services for Medical Solutions and **SULTAN** ("Pittsburgh Medical Marketing").

23.     Magnolia Medical Consultants, LLC, formed in 2013 and located in Harrison County, Mississippi, was a Mississippi Limited Liability Company owned and operated by **STURDAVANT** ("Magnolia Medical").

24.     Co-conspirator 1 received compensation from Pittsburgh Medical Marketing for identifying and recruiting beneficiaries and members to receive compounded medications from Pharmacy 1 based on prescriptions issued by **SULTAN** and **STURDAVANT**.

25.     Co-conspirator 2 received compensation from Pittsburgh Medical Marketing for identifying and recruiting beneficiaries and members to receive compounded medications from Pharmacy 1 based on prescriptions issued by **SULTAN** and **STURDAVANT**.

26.     Co-conspirator 3 was employed by **SULTAN** as an office worker for Medical Solutions, and compensated through Pittsburgh Medical Marketing.

## COUNT 1

### The Conspiracy and Its Object

27.     The allegations at paragraphs 1 through 26 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

28.     Beginning in or around March 2014, and continuing through in or around February 2015, in Jones and Jackson Counties, in the Southern District of Mississippi, and elsewhere, the defendants,

**SHAHJAHAN SULTAN, M.D.,**
**THOMAS EDWARD STURDAVANT, M.D.,**
**FREDA CAL COVINGTON, R.N., and**
**FALLON DENEEM PAGE, R.N.,**

conspired and agreed with each other, and Co-conspirator 1, Co-conspirator 2, Co-conspirator 3, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.     to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, TRICARE, Blue Cross, United and other health care benefit programs, and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of TRICARE, Blue Cross, United, and other health care benefit programs, in connection with the delivery of and payment for health care benefits and services, in violation of Title 18, United States Code, Section 1347; and

b.     to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and to knowingly deposit or cause to be

deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing for the purpose of executing such scheme and artifice or attempting to do so, in violation of Title 18, United States Code, Section 1341.

### Purpose of the Conspiracy

29.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to TRICARE, Blue Cross, United, and other health care benefit programs; (b) submitting and causing the submission of claims to TRICARE, Blue Cross, United, and other health care benefit programs based upon materially false and fraudulent pretenses, representations and promises; and (c) concealing the submission of false and fraudulent claims to TRICARE, Blue Cross, United, and other health care programs.

### Manner and Means

30.     The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

a.     To maximize reimbursements from TRICARE, Blue Cross, United, and other health care benefit programs, Pharmacy 1 formulated compounded medications, not based on evaluations of effectiveness or individualized patient need, but rather based on the reimbursement amount per ingredient included ("high-yield compounded medications");

b.     Pharmacy 1 mass produced high-yield compounded medications and further preprinted a series of prescription forms listing the high-yield combinations ("preprinted prescription forms") in order to encourage prescribers to prescribe these specific high-yield compounded medications;

c.     **SULTAN** agreed with Pharmacy 1 to prescribe high-yield compounded

6

medications to beneficiaries and members utilizing the preprinted prescription forms in exchange for a percentage of the reimbursements paid by TRICARE, Blue Cross, United, and other health care benefit programs to Pharmacy 1 for dispensing high-yield compounded medications to beneficiaries and members;

      d.     **SULTAN** solicited and paid **STURDAVANT** to aid **SULTAN** in prescribing high-yield compounded medications;

      e.     **SULTAN** solicited and paid **PAGE, COVINGTON**, Co-conspirator 1, Co-conspirator 2, and other recruiters to identify and recruit beneficiaries and members to receive these high-yield compounded medications;

      f.     On **SULTAN's** behalf, in exchange for monetary compensation and typically under the guise of receiving cosmetic injections or weight loss medications, **PAGE, COVINGTON**, Co-conspirator 1, Co-conspirator 2, and other recruiters identified and recruited beneficiaries and members to receive high-yield compounded medications at no cost to the beneficiaries and members;

      g.     **PAGE, COVINGTON**, Co-conspirator 1, Co-conspirator 2, and other recruiters met with beneficiaries and members, in Jones County, Mississippi, and elsewhere, in public areas, including gas stations and ball parks, and solicited their identification and insurance information ("patient information");

      h.     Upon soliciting patient information, **PAGE, COVINGTON**, and others, typically, performed cursory medical evaluations upon beneficiaries and members, and, typically, contacted **SULTAN** or **STURDAVANT** utilizing a video-chat application on an electronic device, whereupon **SULTAN** or **STURDAVANT** would ask general questions of the beneficiaries and members regarding weight loss, but ultimately about conditions or symptoms related to pain or

7

scars;

i.      Irrespective of whether **SULTAN** or **STURDAVANT** actually communicated with the beneficiaries and members and irrespective of what beneficiaries and members communicated their actual conditions to be, **PAGE**, **COVINGTON**, Co-Conspirator 1, Co-conspirator 2, and other recruiters, without giving beneficiaries and members a choice in which pharmacy, if any, to utilize, forwarded to Pharmacy 1 or Co-conspirator 3 patient information and prescriptions or lists of compounded medications to be prescribed;

j.      If health care benefit programs provided coverage, then Pharmacy 1 notified **SULTAN** or **STURDAVANT** seeking authorization to dispense the recommended high-yield compounded medications;

k.      **SULTAN** and **STURDAVANT** prescribed high-yield compounded medications to, and authorized automatic refills for, beneficiaries and members, typically verbally or by completing and signing preprinted prescription forms, irrespective of whether the high-yield compounded medications were medically necessary, and, on occasion, without examining the beneficiaries and members;

l.      In prescribing these high-yield compounded medications, **SULTAN** and **STURDAVANT**, each, on occasion, prescribed, and authorized automatic refills for, ketamine, a Schedule III controlled substance, to beneficiaries and members that were never examined;

m.      Pharmacy 1 dispensed, typically by mailing via Federal Express, high-yield compounded medications to beneficiaries and members predicated on prescriptions authorized by **SULTAN** and **STURDAVANT**, and subsequently submitted electronic claims through interstate wire transmissions to TRICARE, Blue Cross, United, and other health care benefit programs, through their respective pharmacy benefit managers, seeking reimbursement for the high-yield

8

compounded medications dispensed;

n.    TRICARE, Blue Cross, United, and other health care benefit programs reimbursed Pharmacy 1's claims for dispensing high-yield compounded medications relying on Pharmacy 1's representations that high-yield compounded medications were dispensed based upon valid prescriptions and were medically necessary;

o.    TRICARE, Blue Cross, and United, and other health care benefit programs reimbursed Pharmacy 1 more than $7 million for claims submitted for dispensing high-yield compounded medications predicated on prescriptions authorized by **SULTAN** and **STURDAVANT**;

p.    Pharmacy 1, in turn, paid **SULTAN**, through Pittsburgh Medical Marketing, at least twenty-five percent of the reimbursements received from health care benefit programs for dispensing high-yield compounded medications predicated on prescriptions authorized by **SULTAN and STURDAVANT**, including on reimbursements received from TRICARE; and

q.    Upon receiving payment from Pharmacy 1, **SULTAN**, through Pittsburgh Medical Marketing, Medical Solutions, or through an account he held jointly with another, in turn, paid, directly or indirectly, **COVINGTON, PAGE**, Co-conspirator 1, Co-conspirator 2, and other recruiters a fee for identifying and recruiting beneficiaries and members to receive high-yield compounded medications, specifically including TRICARE beneficiaries.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5

31.    Paragraphs 1 through 26 and 30 of the Indictment are realleged and incorporated by reference herein as though fully set forth herein.

9

32.    On or about the dates specified below, in Jones, Jackson, and Harrison Counties, in the Southern District of Mississippi, and elsewhere, for the purpose of executing the above-described scheme to defraud TRICARE, Blue Cross, United, and other health care benefit programs, and obtain money by materially false and fraudulent pretenses and representations, the defendants,

**SHAHJAHAN SULTAN, M.D.,**
**THOMAS EDWARD STURDAVANT, M.D., and**
**FALLON DENEEM PAGE, R.N.,**

aided and abetted by one another and by others known and unknown to the Grand Jury, did knowingly cause to be sent or delivered by any private or commercial interstate carrier, namely Federal Express, and took and received therefrom high-yield compounded medications for the purpose of executing such scheme and artifice or attempting to do so, with each mailing constituting a separate count:

| Count | Defendant | Description of Mailing | Approximate Date of Mailing |
|---|---|---|---|
| 2 | **SULTAN** | High-yield compounded medications, bearing prescription numbers 72293 and 72316, mailed from Pharmacy 1, located in Jackson County, Mississippi, to Beneficiary B.F., located in Davidson County, Tennessee, via Federal Express, bearing shipping number 770346254891 | 06/18/2014 |
| 3 | **SULTAN** | High-yield compounded medications, bearing prescription numbers 72262 and 72274, mailed from Pharmacy 1, located in Jackson County, Mississippi, to Member J.A., located in Harrison County, Mississippi, via Federal Express, bearing shipping number 770389714520 | 06/23/2014 |
| 4 | **STURDAVANT PAGE** | High-yield compounded medications, bearing prescription numbers 42332 and 42334, mailed from Pharmacy 1, located in Jackson County, Mississippi, to Member M.W., located in Jones County, Mississippi, via Federal Express, bearing shipping number 771549761523 | 10/20/2014 |

| 5 | STURDAVANT PAGE | High-yield compounded medications, bearing prescription numbers including 42596 and 42597, mailed from Pharmacy 1, located in Jackson County, Mississippi, to Member K.M., located in Jones County, Mississippi, via Federal Express, bearing shipping number 771598117312 | 10/23/2014 |
|---|---|---|---|

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT 6

### The Conspiracy and Its Object

33.    Paragraphs 1 through 26 and 30 of the Indictment are realleged and incorporated by reference herein as though fully set forth herein.

34.    Beginning in or around March 2014, and continuing through in or around February 2015, in Jones, Jackson, and Harrison Counties, in the Southern District of Mississippi, and elsewhere, the defendants,

### SHAHJAHAN SULTAN, M.D. and
### THOMAS EDWARD STURDAVANT, M.D.,

did knowingly and intentionally conspire, confederate, and agree with each other and persons known and unknown to the Grand Jury to distribute and dispense, outside the scope of professional practice and not for a legitimate medical purpose, quantities of ketamine, a Schedule III controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(E)(i), all in violation of Title 21, United States Code Section, 846.

## COUNTS 7-10

35.    Paragraphs 1 through 26 and 30 of the Indictment are realleged and incorporated by reference herein as though fully set forth herein.

36.    On or about the dates identified in the table below, in Jones, Jackson, and Harrison Counties, in the Southern District of Mississippi, and elsewhere, the defendants,

11

SHAHJAHAN SULTAN, M.D. and
THOMAS EDWARD STURDAVANT, M.D.,

aided and abetted by others known and unknown to the Grand Jury, did knowingly and

intentionally distribute and dispense, outside the scope of professional practice and not for a

legitimate medical purpose, quantities of a Schedule III controlled substance:

| Count | Defendant | Beneficiary/ Member | Approximate Prescription/ Refill Date | Prescription Number | Controlled Substance | Schedule |
|-------|-----------|---------------------|---------------------------------------|---------------------|----------------------|----------|
| 7 | SULTAN | J.A. | 06/23/2014 | 72262 | Ketamine | III |
| 8 | SULTAN | D.C. | 09/05/2014 | 42043 | Ketamine | III |
| 9 | STURDAVANT | M.W. | 09/12/2014 | 42332 | Ketamine | III |
| 10 | STURDAVANT | K.M. | 09/18/2014 | 42596 | Ketamine | III |

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(E)(i), and Title

18, United States Code, Section 2.

## COUNT 11

37.     Paragraphs 1 through 26 and 30 of the Indictment are realleged and incorporated by

reference herein as though fully set forth herein.

38.     Beginning in or around March 2014, and continuing through in or around February

2015, in Jackson County, in the Southern District of Mississippi, and elsewhere, the defendant,

SHAHJAHAN SULTAN, M.D.,

conspired and agreed with others known and unknown to the Grand Jury, to commit certain

offenses against the United States, that is,

a.      to knowingly and willfully solicit and receive remuneration, specifically,

kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring

individuals for the furnishing and arranging for the furnishing of any item and service for which

payment may be made in whole or in part by a Federal health care program, that is, TRICARE;

and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing,

leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, TRICARE, in violation Title 42, United States Code, Sections 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B); and

        b.     to knowingly and willfully offer and pay remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is, TRICARE; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, TRICARE, in violation of Title 42, United States Code, Sections 1320a-7b(b)(2)(A) and 1320a-7b(b)(2)(B).

## Purpose of the Conspiracy

39.    It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by (1) offering, paying, soliciting, and receiving kickbacks and bribes in exchange for referring TRICARE beneficiaries and arranging and recommending high-yield compounded medications to be prescribed and dispensed to TRICARE beneficiaries by Pharmacy 1, and (2) submitting and causing the submission of claims to TRICARE for high-yield compounded medications procured by kickback payments.

## Overt Acts

40.    In furtherance of the conspiracy, and to accomplish its object and purpose, the defendant and his co-conspirators committed and caused to be committed, in Jackson County, in the Southern District of Mississippi, and elsewhere, the following overt acts:

a.      In or around early 2014, **SULTAN** met with the owners of Pharmacy 1 and agreed to prescribe high-yield compounded medications in exchange for a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

b.      In or around May 2014, **SULTAN** solicited Co-conspirator 1, and other individuals, to identify and recruit beneficiaries and members to receive high-yield compounded medications in exchange for kickbacks and bribes;

c.      In or around May 2014, **SULTAN** solicited Co-conspirator 2 to explicitly identify and recruit TRICARE beneficiaries;

d.      Beginning in or around May 2014, and continuing through in or around July 2014, Co-conspirator 1 recruited TRICARE beneficiaries, including beneficiaries B.F. and J.F., and other members to receive high-yield compounded medications;

e.      Beginning in or around May 2014, and continuing through in or around October 2014, Co-conspirator 2 recruited TRICARE beneficiaries, including beneficiary C.E., and other members to receive high-yield compounded medications;

f.      On or about June 18, 2014, **SULTAN** prescribed high-yield compounded medications to beneficiary B.F., which were dispensed by Pharmacy 1, bearing prescription numbers 72293, 72316, and 72320, and reimbursed by TRICARE at approximately $3,308.78 in total;

g.      On or about June 18, 2014, **SULTAN** prescribed high-yield compounded medications to beneficiary J.F., which were dispensed by Pharmacy 1, bearing prescription numbers 72318 and 72319, and reimbursed by TRICARE at approximately $1,638.97 in total;

h.      On or about June 30, 2014, **SULTAN** prescribed high-yield compounded medications to beneficiary C.E., which were dispensed by Pharmacy 1, bearing prescription

14

numbers 72827, 72828, 72829, 72830, and 72862, and reimbursed by TRICARE at approximately $8,133.33 in total;

      i.     On or about June 30, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications that were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $104,819.40, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

      j.     On or about July 4, 2014, as remuneration for Co-conspirator 1 and Co-conspirator 2 referring TRICARE beneficiaries and members to **SULTAN** to be prescribed high-yield compounded medications that were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, **SULTAN** paid for Co-conspirator 1, Co-conspirator 2, and others to vacation with **SULTAN** in the Cayman Islands;

      k.     On or about July 10, 2014, as remuneration for Co-conspirator 2 referring TRICARE beneficiaries and members to **SULTAN** to receive high-yield compounded medications, which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, **SULTAN**, through Pittsburgh Medical Marketing, paid Co-conspirator 2 approximately $5,000.00;

      l.     On or about July 11, 2014, as remuneration for Co-conspirator 1 referring TRICARE beneficiaries and members to **SULTAN** to receive high-yield compounded medications, which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, **SULTAN**, through Pittsburgh Medical Marketing, paid Co-conspirator 1 approximately $1,950.00;

m.      On or about July 16, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $75,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

n.      On or about July 28, 2014, as remuneration for Co-conspirator 2 referring TRICARE beneficiaries and other members to **SULTAN** to receive high-yield compounded medications, which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, **SULTAN**, through Pittsburgh Medical Marketing, paid Co-conspirator 2 approximately $5,800.00;

o.      On or about July 31, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through a joint account held by **SULTAN**, kickbacks totaling approximately $20,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

p.      On or about July 31, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $152,231.95, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

q.      On or about August 13, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $75,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

r.      On or about August 29, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $340,229.80, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

s.      On or about September 5, 2014, as remuneration for Co-conspirator 2 referring TRICARE beneficiaries and other members to **SULTAN** to receive high-yield compounded medications, which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, **SULTAN**, through Medical Solutions, paid Co-conspirator 2 approximately $7,000.00;

t.      On or about September 15, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $100,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

17

u.    On or about September 22, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $150,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

v.    On or about September 26, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $250,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

w.    On or about September 30, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through a joint account held by **SULTAN**, kickbacks totaling approximately $150,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

x.    On or about October 1, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $57,664.39, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

18

y.      On or about October 6, 2014, as remuneration for Co-conspirator 2 referring TRICARE beneficiaries and other members to **SULTAN** to receive high-yield compounded medications, which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, **SULTAN**, through Pittsburgh Medical Marketing, paid Co-conspirator 2 approximately $5,800.00;

z.      On or about October 6, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $180,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

aa.     On or about October 8, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, **SULTAN**, through Pittsburgh Medical Marketing, paid **STURDAVANT**, through Magnolia Medical, approximately $45,000.00;

bb.     On or about October 9, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $180,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

cc.     On or about October 17, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and

reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $180,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

   dd. On or about October 24, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $180,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE; and

   ee. On or about October 31, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, Pharmacy 1 paid **SULTAN**, through Pittsburgh Medical Marketing, kickbacks totaling approximately $150,000.00, representing a percentage of the reimbursements paid by health care benefit programs, including TRICARE;

   ff. On or about November 6, 2014, as remuneration for prescribing beneficiaries and members high-yield compounded medications which were dispensed by Pharmacy 1 and reimbursed by health care benefit programs, including TRICARE, **SULTAN**, through Pittsburgh Medical Marketing, paid **STURDAVANT**, through Magnolia Medical, approximately $70,000.00;

  All in violation of Title 18, United States Code, Section 371.

## COUNTS 12-15

41.     Paragraphs 1 through 26, 30, and 40 of the Indictment are realleged and incorporated by reference herein as though fully set forth herein.

42.     On or about the dates identified in the table below, in Jackson County, in the Southern District of Mississippi, and elsewhere, the defendant,

### SHAHJAHAN SULTAN, M.D.,

did knowingly and willfully offer and pay remuneration, that is kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to Co-conspirator 1, Co-conspirator 2, and others in return for referring TRICARE beneficiaries to **SULTAN** for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program as defined in Title 42, United States Code, Section 1320a-7b(f), that is, TRICARE, as set forth below:

| Count | Description | Approximate Date of Payment | Approximate Amount |
|---|---|---|---|
| 12 | Payment by **SULTAN** to Co-conspirator 2 for referring TRICARE beneficiary C.E. to **SULTAN** to be prescribed high-yield compounded medications, including prescriptions bearing numbers 72827, 72828, 72829, 72830, and 72862. | July 10, 2014 | $150 |
| 13 | Payment by **SULTAN** to Co-conspirator 2 for referring TRICARE beneficiary R.G. to **SULTAN** to be prescribed high-yield compounded medications, including prescriptions bearing numbers 72642, 72652, 72653, and 72654. | July 10, 2014 | $150 |
| 14 | Payment by **SULTAN** to Co-conspirator 1 for referring TRICARE beneficiary B.F. to **SULTAN** to be prescribed high-yield compounded medications, including prescriptions bearing numbers 72293, 72316, and 72320. | July 11, 2014 | $100 |
| 15 | Payment by **SULTAN** to Co-conspirator 1 for referring TRICARE beneficiary J.F. to | July 11, 2014 | $100 |

| | SULTAN to be prescribed high-yield compounded medications, including prescriptions bearing numbers 72318 and 72319. | | |
|---|---|---|---|

Each of the above is a violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

## FORFEITURE ALLEGATIONS

1.    Upon conviction of Counts 1 through 5 and Count 11 contained in this Indictment, the defendants, **SHAHJAHAN SULTAN, M.D., THOMAS EDWARD STURDAVANT, M.D., FREDA CAL COVINGTON, R.N., and FALLON DENEEM PAGE, R.N.**, shall forfeit to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7); and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds of the violations, including but not limited to a sum of money equal to the amount of gross proceeds of the offenses.

2.    Upon conviction of Counts 6 through 10 contained in this Indictment, the defendants, **SHAHJAHAN SULTAN, M.D. and THOMAS EDWARD STURDAVANT, M.D.**, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the violations, including but not limited to a sum of money equal to the amount of gross proceeds of the offenses, all property involved in or traceable to property involved in the offense, and all property used to facilitate the offense.

3.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court; and

d.      has been substantially diminished in value; or has been commingled with

other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as

incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described above.

D. MICHAEL HURST, JR.
United States Attorney

A TRUE BILL:

s/ signature redacted

Foreperson of the Grand Jury

This indictment was returned in open court by the foreperson or deputy foreperson of the
Grand Jury on this the ___12th___ day of ___June___, 2019.

UNITED STATES MAGISTRATE JUDGE

23